USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/27/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
IVAN TO MAN PANG,

                            Plaintiff,

                    -against-

CUSHMAN & WAKEFIELD U.S., INC.,
ANTHONY YE, WILLIAM CARLEY and
RENAE STOKKE,

                          Defendants.
------------------------------------------------------------ X

20-CV-10019 (VEC) (SN)

ORDER ADOPTING REPORT &
RECOMMENDATION

VALERIE CAPRONI, United States District Judge:

On November 27, 2020, *pro se* Plaintiff Ivan To Man Pang ("Plaintiff") commenced this action against Cushman & Wakefield., Inc ("C&W"), Anthony Ye ("Ye"), and Renae Stokke ("Stokke") alleging: race, national origin, and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), New York City Administrative Code §§ 8-101 *et seq.*; age discrimination in violation of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621 *et seq.*, NYSHRL, and NYCHRL; hostile work environment in violation of Title VII, the ADEA, NYSHRL, and NYCHRL; and retaliation in violation of Title VII, NYSHRL, and NYCHRL. After discovery, the parties cross-moved for summary judgment. *See* Def. Mot., Dkt. 87; Pl. Mot., Dkt. 97. Judge Nathan, then presiding, referred the motions to Magistrate Judge Netburn for a Report and Recommendation ("R&R"). *See* Order, Dkt. 93.

Magistrate Judge Netburn recommended that the Court grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion for summary judgment. *See* R&R, Dkt.

1

108. Plaintiff objected to the R&R. *See generally* Pl. Obj., Dkt. 115. For the following reasons, the Court ADOPTS the R&R in its entirety.

## BACKGROUND

The Court refers the reader to the R&R's detailed recitation of the factual background in this case. For the purposes of this Order, the Court summarizes only the most pertinent facts.

Plaintiff began working as a Senior Accountant for C&W in March 2014, initially earning an annual salary of $75,000. R&R at 2. Plaintiff, who was 56 years old at the time of his deposition, identifies as Asian of Chinese heritage. *Id.* As a Senior Accountant, Plaintiff was responsible for managing expenses and invoices related to the locations of Citigroup, a client of C&W. *Id.* Plaintiff's direct supervisor, Ye, was a 38-year-old male at the time of his deposition and, like Plaintiff, identifies as Asian of Chinese heritage. *Id.* Ye reported to Carley, the Director of Finance for C&W's Citigroup Account, who was 67 at the time of his deposition. *Id.*[1]

As Plaintiff's supervisor, Ye evaluated Plaintiff's performance, which was a factor in determining annual bonus and salary increases. *Id.* at 3. In 2014, Plaintiff was rated a "Good Performer," but Ye noted some performance deficiencies. *Id.* From 2014 to 2017, Ye's performance ratings of Plaintiff steadily improved. *Id.*[2] In 2018, however, Plaintiff was rated "Needs Improvement." *Id.* at 4. As a result, Plaintiff did not receive an annual salary increase and received only 50% of his projected bonus. *Id.*

---

[1] Carley's racial identity and national origin are not reflected in the record, although Plaintiff asserts that Carley is white. *See* R&R at 2 n.2.

[2] In 2015 and 2016, Plaintiff was rated "Good Performance Plus." R&R at 3. In 2017, Plaintiff was rated "Very Good Performance." *Id.* Each of these ratings was sufficient for Plaintiff to receive his then-projected bonus and scheduled salary increase. *See id*.

Because of Plaintiff's position, he had access to his team's salary and payroll information. *See id.* at 3–4. In 2014, Plaintiff complained to Ye that fellow Senior Accountant, Winnie Huynh, a female, earned $5,000 more per year than Plaintiff. *Id.* at 2. Ye told Plaintiff that he was unable to increase Plaintiff's salary. *Id.*

On March 16, 2015, Defendants issued Plaintiff a warning letter related to an email exchange with a subordinate. The subordinate had complained to Plaintiff that he had not been provided sufficient training to complete a particular assignment. *Id.* at 3. Plaintiff responded that he had given the employee "the brief instruction to follow," and that Plaintiff was not the subordinate's "babysitter." *Id.*

In November 2018, Plaintiff learned that Christine Baynes received an increase of $10,000 to her salary when she was transferred from a non-exempt role to an exempt position in the Financial Department. *Id.* at 3–4. Plaintiff prepared a chart of the salaries of all department members and met with Ye and Carley to request a raise. *Id.* at 4. Plaintiff's request was denied because he was already being paid at market level; Baynes had been given an increase to bring her salary to market level. *Id.*

On November 28, 2018, Plaintiff contacted a Human Resources ("HR") Manager and requested a job transfer. *Id.* at 4. Plaintiff told HR that his work was not appreciated; he did not, however, indicate that he had been unfairly compensated because of his national origin, race, gender, or age. *Id.* HR explained to Plaintiff how to pursue an internal transfer; Plaintiff failed to follow through on those instructions. *Id.* at 4, 12.

In early 2019, Ye and Carley met with Plaintiff to discuss his 2018 performance evaluation in which he was rated "Needs Improvement." *Id*. at 4. On April 4, 2019, Plaintiff sent an email to the Director of Human Resources and more than 40 other recipients objecting to

his 2018 performance evaluation. *Id*. at 5. Plaintiff disputed that his job performance was poor and complained about being assigned work outside of his role; he did not assert that he was being discriminated against because of his race, national origin, gender, or age. *Id*. Stokke, the Employee Relations Senior Manager, conducted a formal investigation of the allegations in Plaintiff's email. Stokke concluded that Plaintiff had not been treated unfairly and recommended that Defendants provide him with a Memorandum of Expectations ("MOE") to outline their expectations for his job performance. *Id*.

On April 29, 2019, Plaintiff met with HR, Ye, and Carley to review the MOE. *Id*. Plaintiff objected to the MOE and was told that he could not return to work unless he signed it. *Id*. Plaintiff refused to sign the MOE and was suspended. *Id*.

On May 1, 2019, Plaintiff complained to HR that he had been "treated unfairly for [the] last 5 years," which he attributed to his "gender or race." *Id*. Plaintiff stated that he was "the only Male Asian on the team" and complained that his "white and female" coworkers were treated better in terms of work and were paid more. *Id*. Plaintiff's complaint was escalated to Kifi Haque, the Head of North America Employee Relations, for investigation. *Id*. Haque discussed Plaintiff's complaint with Plaintiff and offered him severance if he chose to resign. *Id*. at 5–6. A revised MOE was issued on May 17, 2019, but Plaintiff remained dissatisfied with the MOE. *Id*. at 6.

On May 28, 2019, Plaintiff forwarded to his personal email account two emails that, according to Defendants, contained confidential personally identifiable information ("PII") belonging to Citigroup, C&W's client. *Id*. Plaintiff admitted that he sent the emails, but he denied that the emails contained any PII. *Id*. Plaintiff was placed on paid administrative leave

4

pending further investigation, and, on May 31, 2019, C&W terminated his employment for violating the Global Code of Business conduct by sending PII outside of C&W. *Id*. at 6, 19–20.

In a well-reasoned, thorough R&R, Magistrate Judge Netburn recommends granting Defendants' motion for summary judgment and denying Plaintiff's cross-motion for summary judgment on the grounds that Plaintiff failed to establish a prima facie case of discrimination based on race, national origin, or sex, and even if he had, that he failed to raise a triable issue of material fact that Defendants did not have a legitimate, non-discriminatory motive for their complained-of actions. *See id*. at 17, 32. The R&R further recommends granting Defendants summary judgment because Plaintiff failed to establish a prima facie case of age discrimination, hostile work environment, or retaliation. *Id*. at 26, 29, 32. For the following reasons, the Court ADOPTS the R&R in its entirety.

## DISCUSSION

### I. Legal Standard

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When no timely objections are made to a magistrate judge's R&R, a district court may adopt the R&R unless there is a "clear error on the face of the record." *Phillips v. Reed Grp., Ltd*., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). When a party makes specific, written objections to the R&R, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997) (citing 28 U.S.C. § 636(b)(1)). To warrant *de novo* review, the objections must be "specific" and "address only those portions of the proposed

findings to which the party objects." *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 671 (S.D.N.Y. 2011) (citation omitted). If "a party's objections are conclusory or general, or simply reiterate original arguments, the district court reviews the [R&R] for clear error." *Id*. A magistrate judge's decision is clearly erroneous only if the district court is "left with the definite and firm conviction that a mistake has been committed." *Cameron v. Cunningham*, 2014 WL 4449794, at *2 (S.D.N.Y. Sept. 9, 2014) (quoting *Easley v. Cromartie*, 532 U.S. 234, 235, 242 (2001)).

Submissions by *pro se* litigants are construed more leniently than submissions by lawyers and are interpreted to raise the strongest arguments they suggest. *See Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (citation omitted); *see also Goldstein v. Hulihan*, 2011 WL 4954038, at *1 (S.D.N.Y. Oct. 18, 2011). Nevertheless, a *pro se* litigant's objections to a magistrate judge's R&R "must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Goldstein*, 2011 WL 4954038, at *1 (quoting *Pinkney v. Progressive Home Health Servs.*, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008)).

Here, Plaintiff argues that Magistrate Judge Netburn mischaracterized facts in the record, ignored critical facts, or broadly erred in her legal conclusions. Plaintiff's objections either (1) regurgitate the same arguments he made before Magistrate Judge Netburn; (2) mischaracterize the R&R; or (3) misrepresent the record. Accordingly, the Court reviews the R&R for clear error as to each of Plaintiff's claims.

## II.     Race, National Origin, and Sex Discrimination Claims

Plaintiff fails to raise any valid objections to the R&R's findings on his race, national origin, and sex discrimination claims. Many of Plaintiff's objections are mere perfunctory responses that largely rehash the arguments made in Plaintiff's original motion. *Compare* Pl.

Mem. at 8, Dkt. 99 (arguing that Defendants' failure to appropriately investigate Plaintiff's complaint constitutes an adverse employment action), *with* Pl. Obj. at 7, 13–14 (arguing that Magistrate Judge Netburn did not provide a "fair recommendation" when she found that Defendants' failure to take Plaintiff's complaint "seriously" did not constitute an adverse employment action). The R&R was not clearly erroneous when it found that Defendants' alleged failure to investigate Plaintiff's salary complaint did not constitute an adverse employment action.

Plaintiff also "did not agree" with the R&R's finding that Plaintiff's inability to secure an internal transfer was due, in part, to his own failure to pursue it. Pl. Obj. at 7. Magistrate Judge Netburn, however, correctly applied the law in this circuit: whether Plaintiff "follow[ed] through on instructions on how to pursue an internal transfer" is irrelevant because the denial of a transfer does not constitute an adverse employment action unless it creates "a materially significant disadvantage in [the Plaintiff's] working conditions." R&R at 12 (citing *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004)). The R&R correctly found that Plaintiff failed to demonstrate that C&W actively prevented him from transferring, a fact that Plaintiff simply has not refuted.[3]

Plaintiff also objects to what he perceives as instances in which the R&R ignored critical facts favorable to his claim. For example, Plaintiff objects to the R&R's alleged failure to address the adverse impact of his 2018 year-end evaluation on his bonus and projected salary increase. Pl. Obj. at 8. The R&R, however, clearly addressed and considered the consequences

---

[3] Plaintiff claims that he "did what [he] needed to do and HR did not follow the normal process to connect [him] with the recruiter." Pl. Obj. at 7. Exhibits documenting the email exchange between Plaintiff and HR indicate that HR instructed him to "apply directly and then provide [HR] with the requisition number and then [he and HR] can discuss further." *See* Ex. 47 to Pl. Decl., Dkt. 98-3. Plaintiff has presented no evidence that he complied with those instructions.

7

of his 2018 performance evaluation and correctly determined that it, among other actions, constituted an "adverse employment action." R&R at 13.[4] Plaintiff failed to show, however, any evidence that those adverse employment actions occurred under circumstances that would give rise to an inference of discrimination. *Id*. Even if he had, the R&R found that Plaintiff failed to adduce any evidence to rebut Defendants' showing that there were legitimate, non-discriminatory reasons for each of the adverse employment actions. *Id.* at 18.

Plaintiff's broad objection to the R&R's determination that he had failed to show disparate treatment fares no better. Plaintiff argues that he was assigned a disproportionate workload and that his salary "increase[s] were less favorable than the white female colleagues" on his team, thus demonstrating disparate treatment. Pl. Obj. at 8. This objection merely regurgitates the same facts that Plaintiff argued to the Magistrate Judge and that she rejected. *See* Pl. Mem. at 8–9 (arguing that the assignment of additional work to cover for white, female colleagues and receipt of salary increases less favorable than those given to his female colleagues constituted adverse employment actions). The R&R was not clearly erroneous when it rejected those arguments. Magistrate Judge Netburn found that the colleagues that Plaintiff chose as points of comparison were not suitable comparators, and that Defendants nonetheless established legitimate non-discriminatory reasons that justified differential treatment — particularly as it related to salary.[5] R&R at 14–16.

---

[4] Other adverse employment actions included his compensation, Defendants' failure to promote him in June 2018, and his discharge. R&R at 13.

[5] Huynh, the only comparator who shared Plaintiff's job title, was also Asian; that fact undermines Plaintiff's claim of racial discrimination. R&R at 14. Nor did Plaintiff provide substantive evidence that gender played any role in the slight pay gap between him and Huynh. The R&R pointed to Huynh's superior performance reviews and previous experience as a consultant as legitimate justifications for the salary gap. *Id.* at 14–15.

8

In short, the Court does not find any clear error in the R&R's findings and adopts the recommendation that Defendants' motion for summary judgment on Plaintiff's race, national origin, and sex discrimination claims be granted.

### III.  Age Discrimination Claims

Plaintiff purports to object to the R&R's findings regarding his age discrimination claims, but states that he "will let the Court decide" whether the mere fact that he "was the oldest on the team and was over 50 years old" is sufficient by itself to establish a prima facie age discrimination claim. Pl. Obj. at 14. Because Plaintiff acknowledges that he does not have any "obvious evidence" of age discrimination, *id.*, the R&R was not clearly erroneous in determining that summary judgment for Defendants was appropriate. Therefore, the Court adopts the R&R's recommendation that Defendants' motion for summary judgment on Plaintiff's age discrimination claims be granted.

### IV.  Hostile Work Environment Claims

Plaintiff objects to the R&R's findings regarding his hostile work environment claims, but he does nothing beyond regurgitating a series of facts from the parties' 56.1 Statement and Counterstatement that he argues would lead any reasonable person to find that Defendants did not act "appropriately." Pl. Obj. at 15–17. Whether Defendants acted "appropriately" is not the legal standard for establishing a prima facie hostile work environment claim. *Feingold v. New York*, 366 F.3d 138, 149–50 (2d Cir. 2004) (to establish a hostile work environment claim, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (cleaned up).

Plaintiff's overly broad, conclusory objection to the R&R's recommendation that Defendants' motion for summary judgment on Plaintiff's hostile work environment claim be granted fails to explain how any particular portion of the record would alter the legal conclusion

9

that he failed to establish sufficiently severe or pervasive harassment to prove a hostile work environment claim.[6] Accordingly, the Court finds that the R&R is not clearly erroneous and adopts the R&R's recommendation that Defendants be granted summary judgment on Plaintiff's hostile work environment claim.

V.     **Retaliation Claims**

Finally, Plaintiff's objections to the R&R's recommendation regarding his retaliation claims fail. Pl. Obj. at 17–19. Rather than explain how the R&R erred, Plaintiff makes a generalized argument that Defendants' actions fit within a lay person's understanding of retaliation. *See id.* at 19 (arguing that Defendants had no reason to terminate his employment other than to retaliate for his various complaints). As the R&R correctly points out, Defendants demonstrated a "legitimate, nondiscriminatory" reason for Plaintiff's termination. R&R at 31–32. Magistrate Judge Netburn's finding that the Plaintiff failed to establish that his termination was in retaliation for the only protected activity in which Plaintiff engaged — his May 1, 2009 email to management alleging discrimination — was not clearly erroneous. *See id.*

The R&R thoroughly considered each of the incidents that Plaintiff alleged constituted protected activity and their connection to his termination. In that analysis, Magistrate Judge Netburn did not make a clear error. Therefore, the Court adopts this portion of the R&R.

---

[6]     Plaintiff's support for his hostile work environment claims is that he was assigned work outside of his formal role and that HR failed adequately to investigate his complaints against management. Pl. Obj. at 15–17. The Second Circuit has found that failures to investigate complaints and assignment of additional work are insufficient to establish a hostile work environment. *Lax v. City Univ. of New York*, 2022 WL 103315, at *2 (2d Cir. Jan. 11, 2022) (citing *Fincher v. Depository Tr. & Clearing Corp.,* 604 F.3d 712, 724 (2d Cir. 2010)). Plaintiff's argument that Defendants' alleged denial of his PTO request "would be a piece of good evidence" in support of his hostile work environment claim, Pl. Obj. at 17, fails for the separate reason that, as indicated in the R&R, it is "unsubstantiated by the record evidence and does not raise a triable issue of material fact," R&R at 29 n.3.

**CONCLUSION**

For the foregoing reasons, the Court ADOPTS the R&R in its entirety. Accordingly, Defendants' motion for summary judgment is GRANTED; Plaintiff's cross-motion for summary judgment or a default judgment is DENIED; and the case is DISMISSED with PREJUDICE. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to mail a copy of this Order to the *pro se* Plaintiff, and to close this case.

**SO ORDERED.**

Date:  **March 27, 2023**
       **New York, New York**

                                    **VALERIE CAPRONI**
                                    **United States District Judge**